IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JAMES S. THACKER,

    Plaintiff,

v.                                Civil Action No. 2:12-cv-09790

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Presently pending before the Court are Plaintiff's Brief in Support of Judgment (ECF No. 12) and Defendant's Brief in Support of Defendant's Decision (ECF No. 13). Both parties have consented to a decision by the United States Magistrate Judge.

Claimant, James Sylvester Thacker, filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income benefits on April 30, 2009, alleging disability beginning October 15, 2007. Claimant asserts experiencing the following conditions: "back problems, hepatitis C and nerves" (Tr. at 216). The claims were denied initially and upon reconsideration. Thereafter, Claimant filed a written request for hearing on January 23, 2010. Claimant appeared at an administrative hearing held by an Administrative Law Judge in Huntington, West Virginia, on March

1

16, 2011.  A decision denying the claims was issued on June 23, 2011.  Claimant's request for review by the Appeals Council was denied on October 24, 2012.  Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2012).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain*

*v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 11). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease, hepatitis C and substance use disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 14). The ALJ then found that Claimant has a residual functional capacity (RFC) to perform a limited range of light work, reduced by nonexertional limitations[1] (Tr. at 15). The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 20). The ALJ concluded that Claimant could perform jobs such as bench worker, small product assembler, surveillance system monitor, final assembler, rater /sorter and product inspector (Tr. at 21). On this basis, Claimant's applications were denied (Tr. at 21-22).

---

[1] Claimant can only occasionally climb, balance, stoop, crouch, kneel or crawl. He should avoid vibrations, temperature extremes, climbing ladders, ropes or scaffolds, work at unprotected heights or around dangerous, moving machinery or excessive dust, fumes and gases (Tr. at 15).

3

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 22, 1978.  Claimant dropped out of school after completing the eighth grade (Tr. at 50).  Claimant reported he "worked constantly" as a laborer for a pipe line company until he was laid off on October 15, 2007 (Tr. at 216). Claimant reported to working 2 months in 2008 drilling for a gas company (Tr. at 217). Claimant lives with his wife and their minor child. Claimant testified at the administrative hearing that his wife quit her job at McDonald's so they would qualify for

4

medical cards (Tr. at 46). Claimant testified that he receives food stamps and HUD housing which only requires him to pay the electric bill (Tr. at 47). Claimant testified that he was arrested once for assault and battery, however, it was dismissed (Tr. at 49).

Claimant argues the decision by the ALJ is not supported by substantial evidence. Claimant asserts that the ALJ failed to properly evaluate Claimant's credibility. Defendant asserts that the ALJ properly evaluated Claimant's credibility in accordance with the regulations. Defendant further argues that substantial evidence supports the ALJ's finding that Claimant could perform the light and sedentary work identified by the Vocational Expert.

Claimant's Medical Background

On March 16, 2011, Claimant testified that he didn't recall when he stopped working but estimated that it was approximately two years prior (Tr. at 53). Claimant testified that he did not get hurt and that he "just couldn't handle it no more." He stated, "I've always... I've had back problems for a long time." (*Id.*) Upon direct examination, Claimant testified that he started having back problems in 2001 or 2002 after a car wreck. He testified that he was a passenger in the blazer his cousin was driving that flipped three times (Tr. at 54). He testified that he has been in two or three automobile accidents since the wreck with his cousin (Tr. at 55). Claimant testified that he hurt his right shoulder blade in the accident with his cousin driving the blazer (Tr. at 56). Claimant is left handed and asserts the seat belt hurt his right shoulder blade in the vehicle wreck (Tr. at 56-57). Claimant testified that his back pain is primarily in the middle of his back, near the bottom of his shoulder blades (Tr. at 55-57).

Claimant was in an automobile accident in 2001. Emergency Room records from Cabell Huntington Hospital dated July 21, 2001, state that Claimant was involved in a

moving vehicular accident the day before (Tr. at 325). The Emergency Room records document Claimant's chief complaint as pain in his left shoulder, side, neck and back. X-rays of his cervical spine and left shoulder taken after the vehicle accident on July 21, 2001, showed no abnormalities (Tr. at 322). X-rays of his cervical spine and right shoulder taken almost a year later on April 10, 2002, were also negative (Tr. at 333).

On April 23, 2004, Claimant underwent a Disability Evaluation by examiner Drew C. Apgar, J.D., D.O., F.C.L.M., Chesapeake Family Medical Center (Tr. at 335-346). The examination reported Claimant's alleged disabilities as chronic back pain and right shoulder pain as a result of the vehicle accident where he was belted in the passenger seat of a blazer being driven by his cousin (Tr. at 336). Claimant's history during the examination indicated that the blazer flipped three times resulting in injury to the driver and Claimant. (*Id.*)

Claimant reported to being employed as a laborer for a drilling company, however, the job ended in January of 2002 (Tr. at 336). Dr. Apgar's examination concluded that "Based on objective findings, claimant would have no difficulty with standing, walking, sitting, lifting, carrying, pushing, pulling, handling objects with the dominant hand, hearing, speaking, traveling" (Tr. at 346).

On April 14, 2005, Claimant underwent an MRI of his thoracic spine without contrast (Tr. at 357). No disc protrusions were noted. The exam revealed "only mild eccentric spinal canal stenosis." An MRI of his lumbar spine without contrast demonstrated "some mild congenital spinal stenosis with no acute abnormality noted" (Tr. at 358). An MRI of Claimant's right shoulder without contrast was normal (Tr. at 359).

Claimant testified that in July 2005, he specifically asked to be treated by Dr. Delanoe Webb because a neighbor told him that Dr. Webb would help him "get hooked up" (Tr. at 86). Claimant testified that he stopped seeing Dr. Webb because he felt over medicated and "strung out." (*Id.*) Claimant unsuccessfully tried to retrieve his medical records from Dr. Webb (Tr. at 44).

Claimant possesses a driver's license, however, at the time of the Adult Mental Profile completed by psychologist Robert G. Martin, M.A., on August 11, 2006, his license was suspended due to driving without insurance (Tr. at 48, 382). During Mr. Martin's assessment, Claimant reported that he had never been arrested or charged with a crime. He denied any involvement with the justice system as a juvenile or an adult. (*Id.*) Claimant reported to spending most of his day taking care of his minor daughter. Mr. Martin concluded that Claimant's speech, immediate memory, remote memory, attention/concentration, task persistence and pace were normal (Tr. at 383-384). Claimant's recent memory was described as "moderately deficient" (Tr. at 383). Mr. Martin's psychological testing interpretation of the Wechsler Adult Intelligence Scale-Third Edition listed Claimant's Verbal IQ score as 94, Performance IQ score as 76 and Full Scale IQ as 85 (Tr. at 384). Mr. Martin noted that Claimant "was not wearing glasses[2] but indicated that he was able to see all the test materials clearly" (Tr. at 385).

On April 3, 2007, Claimant reported to Lincoln Primary Care Center (hereinafter LPCC) with complaint of right arm pain after allegedly dropping a drill press on his arm the day before (Tr. at 454).

---

[2] At the administrative hearing on March 16, 2011, Claimant testified that he owns glasses and that his vision is fine when he wears his glasses (Tr. at 66). Claimant did not have his glasses at the administrative hearing.

On October 17, 2007, Claimant saw Gregory D. Chaney, M.D., regarding migraines and high cholesterol (Tr. at 397). Dr. Chaney prescribed Ultram 50mg for pain and referred Claimant to a pain clinic. (*Id.*) Claimant testified that after he was laid off from employment in 2007, he drew unemployment (Tr. at 83). Even though treating physicians Dr. Chaney and Victor Lahnovych, D.O., advised him to go to physical therapy for his back, Claimant testified that he has never gone (Tr. at 85, 88-89).

On March 3, 2008, Victor Lahnovych, D.O., saw Claimant for the first time regarding complaints of back pain (Tr. at 456). Claimant stated that his current medications are not helping his back pain and asked specifically for the prescription Lortab for pain. Dr. Lahnovych reported that Claimant "has a history of smoking marijuana." (*Id.*) Claimant stated he would stop smoking marijuana if Dr. Lahnovych would prescribe him Lortab. Dr. Lahnovych informed Claimant that he "did not feel comfortable prescribing Lortab, especially in light of reviewing his essentially normal MRIs." Claimant's history reported that he "smokes pot" and was "on unemployment." (*Id.*) Dr. Lahnovych prescribed Claimant Tramadol for pain (Tr. at 457).

On May 21, 2008, Claimant saw Dr. Lahnovych for a check-up (Tr. at 488). Claimant reported that he went to Saint Mary's Medical Center (hereinafter SMMC) pain clinic in April 2008. He stated that he was late for the appointment so he was not seen and he had not rescheduled. Dr. Lahnovych reported that Claimant "continues to have back pain of unknown etiology, despite equivocal MRI findings." (*Id.*) Dr. Lahnovych refilled Claimant's Toradol 60mg prescription for pain (Tr. at 489).

On June 26, 2008, Claimant was seen by Dr. Lahnovych with complaint of a toothache. Claimant was prescribed penicillin and Hydrocodone 5/500mg in a quantity

8

of 30 tablets with no refills (Tr. at 490). On June 27, 2008, David L. Caraway, M.D., Ph.D., interviewed and examined Claimant (Tr. at 626). Dr. Caraway reported Claimant's MRIs of his cervical spine and lumbar spine were unremarkable. The MRI of Claimant's thoracic spine showed a left disc protrusion and left lateral recess stenosis and mild spinal stenosis. Dr. Caraway stated that the MRIs were not consistent with Claimant's pain complaints. Claimant asserts that pain is the greatest on his right side of his body. Dr. Caraway reports "The patient has previously seen Dr. Delano Webb and been on high doses of opioids. He tells me he was on Roxicodone 15mg five times a day and Valium 10 three times a day. He tells me Dr. Webb quit seeing him as he did not keep his psychiatric appointments. He tells me he has also been on Lortab, Percocet, Excedrin, Tylenol, Ibuprofen, Valium and Oxycodone in the past." (*Id.*) Claimant reported that he was "currently laid off."

After examining Claimant on June 27, 2008, Dr. Caraway reported "At this time [Claimant] is on a significant amount of muscle relaxers… He is on non-narcotics at this time and that is probably reasonable for him" (Tr. at 627). Dr. Caraway obtained a medical records release from Claimant to submit to Dr. Delano Webb's office. However, when Dr. Caraway's office faxed the release to Dr. Webb's office, Dr. Webb's office stated they would not fax the records. Dr. Webb's office stated that Claimant had to come to the office to pick up the records himself. Dr. Caraway noted that "this is not typical protocol. However, I am not surprised by this." He further stated that the records from Dr. Webb's office will be needed prior to proceeding.[3] (*Id.*)

On October 13, 2008, Claimant saw Dr. Lahnovych with complaints of anxiety (Tr. at 491). Dr. Lahnovych refilled Claimant's prescription for Ultram 50mg for pain

---

[3] Medical records from Dr. Webb's office were not obtained and submitted onto the evidence of record.

9

and instructed him to follow-up at SMMC pain clinic (Tr. at 492). On December 2, 2008, Claimant had a follow-up visit with Dr. Lahnovych (Tr. at 493). Claimant asserted that he "went to SMMC pain management" and received joint injections.

On January 8, 2009, Dr. Lanhovych saw Claimant in a follow-up appointment (Tr. at 496). Claimant had an appointment scheduled later that same day with George El-Khoury, M.D., UP&S Internal Med, regarding his positive hepatitis C test results. Claimant complained of continued back pain and reported that Ultram was not helping. Claimant stated that he had not used marijuana since beginning treatment with Dr. Lanhovych. (*Id.*) Dr. Lanhovych prescribed Lortab 5/500mg in the quantity of 90 pills with no refills (Tr. at 497). Dr. Lanhovych went over the LPCC's controlled substance agreement with Claimant point by point in the presence of an office staff member as a witness. (Id.) Claimant reported that he was free from marijuana use and did not wish to continue with pain management at SMMC.

On February 5, 2009, Dr. Lanhovych saw Claimant in a follow-up visit (Tr. at 498). Claimant alleged that Dr. El-Khoury won't treat him for hepatitis C until his back pain is under better control. Claimant refused a referral to Prestera. (*Id.*) Dr. Lanhovych reported the following in the medical record:

> Today is our second and final discussion regarding controlled substance usage. The first was regarding his marijuana usage. When the patient demonstrated a good faith effort to quit marijuana, I agreed to prescribe controlled substances (Lortab). Although the patient's UDS was free of marijuana as he said it would be, it did return positive for oxycodone and a benzodiazepine which metabolizes to oxazepam. At the last visit, the LPCC controlled substance agreement was discussed in detail. Neither oxycodone nor benzodiazepine usage was disclosed at that time (as was required by the agreement). I confronted the patient and he admits to nondisclosure of taking Percocet and Valium, specifically.
>
> The patient is well aware (and has verbalized) that he has breached the LPCC controlled substance agreement and, as a result, he understands the

10

> consequence that no further controlled substances could ever be prescribed to him from our clinic under any circumstances.
>
> Though I offered to make him a follow-up appointment with pain management at SMMC, he again voiced his disdain for following up with pain management.

Dr. Lanhovych's comments stated that he will discontinue prescribing Lortab to Claimant due to breach of controlled substance agreement (Tr. at 499).

On February 12, 2009, Claimant saw Dr. Lahnovych for a follow-up visit (Tr. at 453-454). Dr. Lahnovych reported that he would not prescribed controlled substances to Claimant due to his use of marijuana. Claimant also declined referrals to a pain management clinic and Prestera (Tr. at 453).

Claimant saw Dr. El-Khoury on August 11, 2009, with complaints of abdominal pain and hepatitis C (Tr. at 668). Claimant reported that he was currently unemployed due to uncontrolled depression. Claimant reported that although he takes pain medicine for his lower back pain, the pain is not controlled. (*Id.*) Claimant reported that he had smoked marijuana during the past 2-3 years (Tr. at 669). Dr. El-Khoury stated that Claimant is not a candidate for hepatitis C therapy due to his ongoing depression and lower back pain (Tr. at 668).

On September 28, 2009, Dr. Chaney reviewed radiology exams of Claimant's cervical spine, thoracic spine and lumbar spine. The radiology exams indicated there were no abnormalities of the vertebrae (Tr. at 619). On October 6, 2009, medical consultant Curtis Withrow, M.D., performed a Physical Residual Functional Capacity Assessment of Claimant (Tr. at 566-573). Dr. Withrow reported that Claimant's degree of functional limitation seems to exceed the documented medical evidence of record (Tr.

at 571). Dr. Withrow reported that Claimant seems only partially credible in this regard. (*Id.*)

On December 8, 2009, Claimant reported to LPCC with burns on his right forearm. Claimant reported that he sustained the burns "while working on his car a couple of days ago" (Tr. at 664). Claimant testified at the administrative hearing that he burned his right arm while working on the pipe bolts near the exhaust manifold on his blazer (Tr. at 96). Claimant was using a torch to cut the bolts (Tr. at 97).

Claimant reported that he donates plasma twice per week. He was informed by a plasma center that he tested positive for hepatitis C. Claimant reported that if his wife is negative for hepatitis C, he plans on leaving her. Dr. Lahnovych prescribed Ultram 50mg for pain, Toradol 60 mg for his headache and referred him to chronic disease counseling (Tr. at 494).

On June 11, 2010, Claimant saw Suleiman Halabeh, M.D., UP&S International Med (Tr. at 666). Claimant reported that he was currently on disability and had used marijuana during the past 2-3 years.

Disorders of the Spine

The ALJ evaluated the evidence and testimony provided under Section 1.04 of the Listings of Impairments. Claimant asserts that his MRIs support his allegation of disabling back pain. The ALJ held Claimant did not demonstrate any evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication as required to meet or equal the Listing (Tr. at 15). Claimant's MRIs showed only mild congenital stenosis and small disc protrusions at T3-5 with mild stenosis and no cord compression (Tr. at 12). The ALJ pointed out that Claimant did not attend physical therapy after treating physicians recommended it (Tr. at 17). The

ALJ concluded that after careful consideration of the evidence, Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Claimant's statements concerning the intensity, persistence and limiting effects of these systems are not credible to the extent they are inconsistent (Tr. at 19-20). Claimant has failed to meet his burden of proof in demonstrating that substantial evidence supports his allegations of disabling back pain.

Credibility

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence in forming the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

It is well-settled that a claimant's allegations alone will not establish that he is disabled. *See*, 20 C.F.R. § 404.1529 and *Craig v. Chater*, 76 F.3d 585, 594-595 (4th Cir. 1996). While the ALJ must seriously consider a claimant's subjective complaints, it is within the ALJ's discretion to weigh such complaints against the evidence and to reject them. *See*, 20 C.F.R. § 404.1529 and *Craig*, 76 F.3d at 595. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the

13

opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. Claimant's alleged disability date is the same date he was laid off from work. Claimant testified to receiving unemployment after being laid off. After the vehicle accident in July 2011, X-rays were taken of Claimant's left shoulder and back. Approximately a year later when X-rays were taken again, Claimant asserted his right shoulder was injured during the vehicle accident.

Claimant admitted to using marijuana and violating a substance abuse agreement with Dr. Lahnovych. Claimant sought prescriptions for opiates and muscle relaxers. He refused to receive treatment from a pain management clinic and never attended physical therapy. Claimant has never sought substance abuse treatment. The ALJ found Claimant's substance use disorder to be severe and continuing (Tr. at 13). The ALJ concluded that the key factor in determining whether a claimant will not receive disability benefits for alcohol and drug abuse is "whether we would still find you disabled if you stopped using drugs or alcohol." *See*, Social Security Ruling 13-2p: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA) (effective March 22, 2013). The ALJ held that Claimant would not qualify for disability benefits if he stopped using drugs or alcohol.

Vocational Expert

Jill Lilly performed a vocational analysis of Claimant on July 1, 2009 (Tr. at 259). Ms. Lilly concluded that Claimant could perform work at a light exertional level. Ms. Lilly stated that Claimant can perform his past work as a pipeline worker. (*Id.*)

Vocational Expert (hereinafter VE) Gina Baldwin testified at the administrative hearing. VE Baldwin was present throughout the entire hearing and had an opportunity to review the exhibits (Tr. at 99). The ALJ asked VE Baldwin if jobs existed in significant numbers in the national economy that someone with Claimant's age, education, past relevant work and previously stated exertional limitations could perform (Tr. at 100-102). VE Baldwin testified that such a hypothetical person could perform light exertional jobs including rater/sorter, small products assembler and product inspector (Tr. at 101, 102). VE Baldwin testified that such a person could also perform sedentary exertional jobs including bench worker, surveillance system monitor and final assembler (Tr. at 102).

The ALJ then asked VE Baldwin to assume the hypothetical person was moderately deficient in recent memory and suffered mild to moderate impairment due to anxiety. The ALJ asked VE Baldwin if her opinion of the hypothetical person's ability to perform jobs would change. VE Baldwin testified that her previous answers regarding Claimant's ability to perform unskilled and sedentary exertional jobs would not change. (*Id.*) Upon cross-examination, VE Baldwin was asked if her answers would change if Claimant's physical allegations and self-reported need to take naps during the course of an 8 hour day were determined to be credible? (Tr. at 103). VE Baldwin testified that if Claimant's assertions were credible and he also needed to take naps during the course of an 8 hour workday, he would not be able to maintain full-time employment. (*Id.*) Based on VE Baldwin's testimony, the ALJ ruled that Claimant could perform work in the national economy, and therefore, he was not disabled under the Act (Tr. at 47).

Pursuant to SSR 00-4p[4], VE Baldwin's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Claimant asserts that VE Baldwin testified that Claimant is incapable of substantial gainful activity if he were found to be fully credible. However, the ALJ did not find Claimant to be fully credible. Additionally, VE Baldwin testified that after reviewing the evidence of record and listening to the testimony at the administrative hearing, her opinion was that a person with Claimant's age, education, training, work experience and previously stated exertional limitations could perform unskilled and sedentary work available regionally and nationally.

Conclusion

The ALJ's decision was issued on June 23, 2011. The ALJ found that Claimant's impairment does not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Substantial evidence supports the determination of the ALJ. The ALJ appropriately weighed the evidence of record in its entirety to determine that Claimant failed to demonstrate that he was unable to perform any substantial gainful activity. The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2012). Accordingly, the ALJ denied Claimant's applications for DIB and SSI under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is

---

[4] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter: March 18, 2014.**

Dwane L. Tinsley
United States Magistrate Judge